UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **v.** : | Case No. 1:21-mj-00252-ZMF |
| : | |
| **JOSEPH LINO PADILLA,** : | |
| : | |
| **Defendant.** : | |
| : | |

**MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of pretrial detention that the defendant, Jose Padilla, be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A) [Crime of Violence] and 18 U.S.C. § 3142(f)(2)(A) [Risk of Flight]. There are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community, pursuant to 18 U.S.C. §§ 3142(e).

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**PROCEDURAL POSTURE**

On February 22, 2021, a criminal complaint was brought against defendant Padilla charging him with five felony counts and one misdemeanor:

1. Obstruction of Law Enforcement During Civil Disorder (18 U.S.C. § 231(a)(3)) (5 year max);
2. Assault Law Enforcement Officer with a Deadly or Dangerous Weapon (18 U.S.C. § 111(a)(1), and (b)) (20 year max);
3. Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority with a Deadly or Dangerous Weapon (18 U.S.C. § 1752(a)(1), (b)(1)(A)) (10 year max);
4. Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or

Dangerous Weapon (18 U.S.C. § 1752(a)(2), (b)(1)(A)) (10 year max);
5. Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (18 U.S.C. § 1752(a)(4), (b)(1)(A)) (10 year max);
6. Violent Entry and Disorderly Conduct on Capitol Grounds (40 U.S.C. § 5104(e)(2)) (6 month max)

The defendant was arrested in the Eastern District of Tennessee on February 23, 2021. He appeared before Magistrate Judge Susan K. Lee the same day. The defendant waived a detention hearing and preliminary hearing and asked that his hearings and further proceedings be held in the U.S. District Court, District of Columbia. Judge Lee issued a temporary order of detention while the U.S. Marshals transported the defendant. The defendant has not yet arrived in the District of Columbia.

## FACTUAL BACKGROUND

**1. The Attack on the United States Capitol on January 6, 2021**

The government hereby proffers that, two months after the November 3, 2020 presidential election, on January 6, 2021, a joint session of the United States Congress convened at the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election. *See* Compl., Aff. Supp. Crim. Compl. & Arrest Warrant ("Aff.") ¶ 3, ECF No. 1. The joint session began at approximately 1:00 p.m., with then–Vice President Mike Pence presiding. *Id.* By 1:30 p.m., the United States House of Representatives and the United States Senate adjourned to separate chambers within the Capitol to resolve an objection raised in the joint session. *Id.* Vice President Pence continued to preside in the Senate chamber. *Id.*

As the House and Senate proceedings took place, a large crowd of protestors gathered outside the Capitol. *Id.* ¶ 4. "[T]emporary and permanent barricades were in place around the exterior of the . . . building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside." *Id.* Shortly after 2:00 p.m.,

a violent mob of rioters "forced entry" into the Capitol, Aff. ¶ 6, and mayhem broke out inside the building, putting an hours-long halt to the electoral vote count while elected representatives, congressional staff, and members of the press hid from the mob. *Id.* The joint session, and thus the constitutional ritual of confirming the results of the 2020 Presidential Election, "was effectively suspended until shortly after 8:00 p.m." *Id*.

2. **Jose Padilla's Criminal Conduct**

After receiving tips and reviewing Facebook posts, the FBI was able to identify Padilla in a collection of video footage, including body worn camera worn by Metropolitan Police Officers and videos posted online, which captured portions of the riot. *Id.* ¶¶ 8-11. At approximately 1:31pm, Padilla approached a barricade line wearing a blue jacket, black backpack and scuba mask, as he began pushing the barricade screaming, "Push! Push! Fucking push!" *Id.* ¶ 13.

After officers successfully repel Padilla, he, along with other rioters, used a large sign with a metal frame as a battering ram to push back law enforcement. *Id.* ¶ 16-17.

Later, Padilla was observed gathering with a large crowd in front of the archway of the U.S. Capitol Lower West Terrace Doors. Padilla hurled a flagpole at officers who were being attacked by rioters. *Id.* ¶ 18.

Speaking of his participation in the riot, Padilla posted online the following:

> Honestly, the guy breaking the windows weren't Antifa. They were Patriots trying to find a new way in so we could flank the cops who were holding the doorway.
> ….
> If we could have occupied the Capitol, we could have invoked the right given to us in the 2nd paragraph of the Declaration of Independence….We would have been in the Seat of Power. All we would need to do is declare our grievances with the government and dissolve the legislature, and replace it with Patriots who were there. Then simply re-adopt the Constitution with amendments added to secure future Federal elections." *Id.* ¶ 21.

Additionally, Padilla documented his view of the Capitol building in a twenty-second video that was posted to his Facebook page. *Id.* ¶ 20. He can be heard on the video shouting loudly, "let's go" and "come on", ushering more people towards the Capitol Building.

Pursuant to a lawfully-obtained search warrant, law enforcement was able to recover from the defendant's premise the blue jacket, black backpack worn by the defendant on January 6, 2021. The defendant's wife confirmed that the defendant took goggles with him to attend the protests in Washington, D.C. in case he got near pepper spray, but that he did not return with the goggles.

## **LEGAL STANDARD**

Under the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141–3156, "Congress limited pretrial detention of persons who are presumed innocent to a subset of defendants charged with crimes that are 'the most serious' compared to other federal offenses." *United States v. Singleton*, 182 F.3d 7, 13 (D.C. Cir. 1999) (quoting *United States v. Salerno*, 481 U.S. 739, 747 (1987)). Thus, a detention hearing must be held at the government's request only "in a case that involves" a charged offense falling in one of five enumerated categories, 18 U.S.C. § 3142(f)(1)(A)–(E), or if the defendant poses a serious risk of flight or of attempting to obstruct justice or threaten, injure, or intimidate a witness or juror, *id.* § 3142(f)(2)(A)–(B). The BRA "requires that detention be supported by 'clear and convincing evidence' when the justification is the safety of the community." *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). Even if the defendant does not pose a flight risk, danger to the community alone is sufficient reason to order pretrial detention. *Salerno*, 481 U.S. at 755.

The charges brought against Mr. Padilla trigger a detention hearing under 18 U.S.C. 3142(f)(1)(A) ("crime of violence") as well as § 3142(f)(1)(E) ("possession of a dangerous weapon"), defined broadly as "an offense that has as an element of … physical force" or a felony

that "by its nature, involves a substantial risk that physical force against the person or property of another". This case also involves "a serious risk that such person will flee." 18 U.S.C. § 3142(f)(2)(A). Accordingly, the Court "shall hold a hearing to determine whether any condition or combination of conditions … will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. 3142(f).

To determine whether conditions exist that will reasonably assure the appearance of the defendant as required and the safety of any person in the community, the judicial officer shall consider four factors: (1) "the nature and the circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(l)-(4).

## ARGUMENT

The United States submits that there are no conditions or combination of conditions the Court could impose that would reasonably assure the safety of the community or the appearance Mr. Padilla.

*(1) The Nature and Circumstances of the Offense Charged*:

Mr. Padilla has been charged with grave offenses. He forcibly entered and remained on the Capitol grounds and sought to stop, delay, and hinder Congress's certification of the Electoral College vote. He was at the front of the crowd, engaged directly with officers, and pushed against the barricade screaming "Push! Push! Fucking push!" He then assisted in pushing forward a large metal sign to be used as a battering ram with the intent to harm officers. And later, he attacked officers by throwing a flagpole which had the risk of seriously injuring anyone struck by it. As captured in body worn cameras, Padilla yelled directly at the valiant line of law enforcement:

"Ya'll beat me, ya'll tased me, and I ain't stoppin'." His consistent violent attempts to harm officers deployed to protect the Capitol highlight his complete disregard for authority and the sanctity of the law.

Padilla used force to subvert a democratic election and arrest the peaceful transfer of power. By his own admission, his hope was to "dissolve the legislature, and replace it with Patriots." Such conduct threatens the republic itself. Indeed, few offenses are more threatening to our way of life. Padilla's alleged conduct demonstrates a flagrant disregard for the rule of law. Padilla is alleged to have taken part in a mob, which displaced the elected legislature in an effort to subvert our constitutional government and the will of more than 81 million voters. Padilla's alleged conduct and the violence he promoted to "flank the cops who were holding the doorway" indicates that he is willing to use force to promote his political ends. Such conduct poses a clear risk to the community. As stated by Chief Judge Beryl A. Howell, "[t]he actions of this violent mob, particularly those members who breached police lines and gained entry to the Capitol, are reprehensible as offenses against morality, civic virtue, and the rule of law." *See United States v. Chestman*, 21-mj-218 (BAH), ECF No. 23, at *13, 16 (D.D.C. February 26, 2021) ("Grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification"). Here, the defendant attempted to breach the police lines, but due to the heroic efforts of law enforcement, thankfully failed.

For those reasons, the nature and circumstances of the charged offenses strongly support a finding that no conditions of release would protect the community. Additionally, someone who demonstrates such contempt from the rule of law cannot reasonably assure future court appearances.

*(2) The Weight of Evidence Against the Person*:

Substantial evidence supports the position that Padilla poses a threat to the community. Padilla's violent words and actions at the Capitol were captured on film, both through body worn camera footage and social media video. Padilla's unrepentant statements were cataloged online once he left. Padilla cannot dispute that these events indeed occurred. The weight of the evidence thus strongly supports a finding that no conditions of release

would protect the community.

*(3) History and Characteristics of the Person*:

The United States adopts the factual proffer related to the defendant's history and characteristics in the February 23, 2021 pretrial services report generated by Kimberly Williams, United States Probation Officer, in the Eastern District of Tennessee. Given the defendant's unemployment, his mental health condition, and his previous thoughts of suicide, he presents a high risk of non-compliance with any conditions, a significant danger to the community, and a flight risk. *See United States v. Cody*, 498 F.3d 582, 591 (6th Cir. 2007) (recognizing that it is logical to "treat suicide as a form of flight."). Ms. Williams' assessment is that due to the defendant's risk of nonappearance and danger, which is due to his mental health issues and the instant offense, there is no condition or combination of conditions that would reasonably assure the appearance of the defendant as required and the safety of the community. As a result, Ms. Williams recommended the defendant's detention. The government concurs.

*(4) Nature and Seriousness of the Danger to Community*:

Padilla's words and actions evince a serious threat to the community. Per *Chrestman*, grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral

vote count during the riot, thereby encouraging others to engage in such conduct. 21-mj-218, at *13. On several occasions, Padilla was seen engaging in acts of violence. First, he was seen pushing against barriers while wearing scuba mask, which meant he was prepared to push forward against law enforcement despite knowing pepper or mace spray would be deployed with the intent to detract from the violence. *See Chrestman*, at *30 ("Nearly as significant is defendant's use of force to advance towards the Capitol and his use of words to lead and guide the mob in obstructing the police and pushing against police barriers"). He assisted in pushing forward a large sign as a battering ram intended to injure officers, and he threw a long metal flagpole with its only intention to hurt officers. These factors measure the extent of a defendant's disregard for the institutions of government and the rule of law, qualities that bear on both the seriousness of the offense conduct and the ultimate inquiry of whether a defendant will comply with conditions of release meant to ensure the safety of the community.

Padilla gleefully entered the Capitol in the midst of a riot. He did so to stop or delay the peaceful transfer of power. And he carried and used a dangerous weapon. Padilla took these actions in front of hundreds of police officers, indicating that he cannot be deterred easily.

Second, after the events, Padilla recounted in a posting on thedonald.win the following: "The war has been upon us for years and we've just been wringing hands about it. After the events of the 6th, I'm done being passive." By word and deed, Padilla has supported the violent overthrow of the United States government and his recounting of the events on January 6th represent his continued violent attitude and lack of remorse. He poses a clear danger to our republic. All of the release conditions available to the Court depend-at least in part-on voluntary compliance. Accordingly, the potential danger Padilla poses to the community strongly supports a finding that no conditions of release would protect the community.

**CONCLUSION**

Pretrial detention is necessary in this case to ensure the safety of people and the community, and the appearance of the defendant as required. 18 U.S.C. § 3142(f). There is clear and convincing evidence that the defendant would pose a danger to the community if released, and that there are no release conditions or combination of conditions that would ensure the safety of the community. There is probable cause that the defendant would be a flight risk and would not appear at trial as required.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY

_____
JACOB J. STRAIN
Utah Bar No. 12680
PUJA BHATIA
D.C. Bar No. 1009466
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530